Aaron **ABRAMSON, et al.**

v.

**FLORIDA GAS TRANSMISSION COMPANY, et al.**

Civ. A. Nos. 91–4255, 93–2404.

United States District Court,
E.D. Louisiana.

Nov. 30, 1995.

Karen Delcambre McCarthy, Lanny R. Zatzkis, Yvette Anne D'Aunoy, Zatzkis & Associates, New Orleans, LA, Louis B. Merhige, Metairie, LA, for Aaron Abramson.

Louis B. Merhige, Metairie, LA, for Alfred Abramson, Joseph Abramson, Carol Abramson Schudmak, Eugenie Marrus Abramson, Steven M. Brainis, Joseph M. Brainis, David Brainis, Lucy Abramson Brainis, Debra Brainis Lester, Sara Brainis Rambin, and Ethel Abramson.

Michael Ray Mangham, Michael J. O'Shee, Mangham & Hardy, Lafayette, LA, Louis P. Soldano, Florida Gas Transmission Co., Houston, TX, for Florida Gas Transmission Co.

Bryan David Fisher, Hank Seldon Hannah, Hannah, Colvin & Pipes, Baton Rouge, LA, for Ralston & Associates, Inc.

Lawrence Emig Larmann, Dominic J. Ovella, W. Evan Plauché, Hailey, McNamara, et al., Metairie, LA, Russell Louis Sylvester, Brittain & Sylvester, Natchitoches, LA, for Liberty Mutual Insurance Group, defendant.

Eric Shuman, McGlinchey, Stafford, et al., New Orleans, LA, Richard W. Bryan, Douglas C. McAllister, Jackson & Campbell, Washington, DC, for National Union Fire Ins. Co. of Pittsburgh.

Stephen Louis Huber, Borrello, Huber & Dubuclet, Metairie, LA, Lawrence Emig Larmann, Dominic J. Ovella, W. Evan Plauché, Hailey, McNamara, et al., Metairie, LA, for Henkles & McCoy, Inc.

Russell Louis Sylvester, Brittain & Sylvester, Natchitoches, LA, for Liberty Mutual Insurance Company, third-party defendant.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is a "Cross–Motion of Defendant National Union Fire Insurance Company of Pittsburgh, Pa., for Summary Judgment."[1] The motion was taken under submission on a previous date without oral argument. Having reviewed the memoranda of the parties, the record and the applicable law, the Court DENIES the motion.

### Background

Plaintiffs have asserted claims against defendants Florida Gas Transmission Company (hereinafter "Florida Gas") and Henkels & McCoy, Inc., for alleged damages to their property following a reconditioning project on a natural gas pipeline that traverses plaintiffs' property. Plaintiffs seek damages for various items, including but not limited to damages for material allegedly left on the property. Florida Gas owns the pipeline, and Henkels & McCoy was the reconditioning contractor.[2]

Defendant National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "National Union"), issued two policies of insurance to Henkels & McCoy, with effective dates of October 1, 1989, to October 1, 1990, and October 1, 1990, to October 1, 1991 (hereinafter the "1989–90 policy" and "1990–91 policy").[3] According to National Union, it assumes for purposes of the instant motion that coverage is sought under the 1989–90 policy, which is the policy in effect at the time of the pipeline reconditioning project.[4] However, as noted by National Union, both

---

1. Although captioned a "cross-motion for summary judgment," the motion in answer to which this motion was filed, the "Motion for Summary Judgment of Henkels & McCoy Regarding Indemnity" filed by defendant Henkels & McCoy, Inc., is now moot because Henkels & McCoy has dismissed its cross-claim against defendant Florida Gas Transmission Co. (R.Doc. 254.)

2. These background facts were taken from plaintiffs' amended complaints in these consolidated matters. (R.Docs. 101 and 102.)

3. National Union's Statement of Uncontested Material Facts, attached to its motion. (R.Doc. 211.)

4. National Union's memorandum in support, p. 4. (R.Doc. 211.)

policies contain the same exclusions at issue.[5]

National Union seeks summary judgment on three bases in an attempt to exclude coverage for the damages claimed by plaintiffs. First, National Union contends that under the 1989–90, coverage is excluded because the damages were "expected [or] intended from the standpoint of the insured," Henkels & McCoy. Second, National Union posits that the "Contractor's Endorsement" to its policy contains an applicable exclusion to policy coverage. Third, National Union asserts that the "Professional Liability Exclusion Endorsement" bars coverage in this matter.

In opposition, both Henkels & McCoy and Florida Gas argue that, under controlling Louisiana law, the intentional act exclusion is ambiguous and, hence, there are genuine issues of material fact that summary judgment. Further, both maintain that neither the Contractor's Endorsement nor the Professional Liability Exclusion Endorsement are applicable under the facts of this matter.

## Law and Application

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) The mover first bears the burden of "coming forward with the absence of genuine issues of material fact...." *Kinsey v. Farmland Industries, Inc.*, 39 F.3d 603, 606 (5th Cir.1994), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

If the mover meets its burden, the nonmovant's burden of then showing a genuine issue of material fact "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Further, "factual controversies [are resolved] in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

In other words, the inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The substantive law determines materiality of facts, and only facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In essence, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

### II. Intentional Act Exclusion

The 1989–90 policy provides that National Union "will pay on behalf of the Insured that portion of the ultimate net loss in excess of the retained limit ... which the Insured will become legally obligated to pay as compensatory damages ... because of ... Property Damage Liability ... caused by an occurrence...."[6] The policy defines "occurrence" in pertinent part as follows:

> With respect to Personal Injury and Property Damage, the term occurrence means

---

5. *Id.* at 2–3, No. 8–10. The Court understands that the only difference between the policies, which is irrelevant for present purposes, is whether Florida Gas is an insured under the 1990–91 policy.

6. Exh. A, § I, "Motion and Memorandum in Support of Motion for Leave to File Exhibits."

(R.Doc. 214.) As set forth in the foregoing language, the instant policy provides coverage in excess of a retained limit of $2 million provided by the primary insurer, defendant Liberty Mutual Insurance Company. *Id.*, Schedule of Underlying Insurance.

an event, including continuous or repeated exposure to conditions, which result [sic] in Personal Injury and Property Damage *neither expected nor intended from the standpoint of the insured.*[7]

National Union's contention as to this issue arises from Henkels & McCoy's motion for summary judgment against Florida Gas regarding indemnity, wherein Henkels & McCoy asserted that Florida Gas instructed Henkels & McCoy to deposit old polyethylene pipeline coating into the pipeline trench, that Henkels & McCoy did so, and that both Florida Gas and Henkels & McCoy knew that tar from the new pipeline coating would be deposited along the pipeline right-of-way.[8] Hence, National Union argues that the intentional injury exclusion is applicable and that it owes no coverage under the policy.

■ The Louisiana Supreme Court recently summarized the law as to the intentional injury exclusion as at issue here as follows:[9]

Policies should be construed to effect, not deny, coverage. Any ambiguity in an exclusion should be narrowly construed in favor of coverage. The "expected or intended exclusion" has been held to be ambiguous. The insurer bears the burden of proving the applicability of the intentional injury exclusion. The purpose of the intentional injury exclusion is "... to prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for the damages."

The exception, by its language, makes it clear that not all injuries resulting from an intentional act will be excluded, but only those injuries that were themselves intended. "The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to

occur." As for the reasonable expectation of the insured regarding the scope of his coverage, this court has held:

... when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended and a severe injury of any sort occurs, coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.

"The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation." Such determinations of subjective intent are factual and much discretion will be given to the trier of fact.

*Yount v. Maisano,* 627 So.2d 148, 151–52 (La.1993) (citations omitted).

These principles are applicable as to property damage as well as personal injuries. *See Great American Insurance Company v. Gaspard,* 608 So.2d 981 (La.1992) (property damage sustained by owner and other tenants of shopping center when insured tenant intentionally set fire to his leased premises excluded from coverage under intentional injury exclusion identical to that at issue here).

National Union's argument, in essence, is that because Henkels & McCoy intentionally buried debris on plaintiffs' property, summary judgment is appropriate under the intentional injury exclusion. However, National Union's argument founders because there are genuine issues of material fact under the two tests established by the Louisiana Supreme Court for applicability of the intentional injury exclusion.

---

7. *Id.,* Definition No. 5. (Emphasis added.)

8. Memorandum in support of "Motion for Summary Judgment of Henkels & McCoy Regarding Indemnity," pp. 8–9. (R.Doc. 206.) As noted above, this motion is now moot in light of the

dismissal of cross-claims against each other filed by Henkels & McCoy and Florida Gas.

9. Louisiana law is applicable as this case is before the Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332.

Under *Yount* and *Great American*, the Court first ascertains whether Henkels & McCoy "intended to damage the . . . property of [plaintiffs] or had a subjective belief that such a result was certain or substantially certain to follow." *Id.* at 985–86. The deposition testimony of William E. Rome, a Florida Gas vice president, which is relied on by National Union,[10] provides an inference that Henkels & McCoy did not intend to damage the property and/or have a subjective belief that damage was substantially certain to follow after it buried the debris. Rome testified that, because the plastic coating taken off the pipeline had been on the pipeline before under the ground and was not toxic, it was put back into the ground and "that is, by all means, the safest way of handling this."[11] Thus, summary judgment as to the first test of whether the intentional injury exclusion is improper as this is a matter for resolution by the factfinder.

As to the second prong of the *Yount–Great American* test, *i.e.*, whether Henkels & McCoy as "the reasonable policy holder would believe that [its] insurance policy would provide coverage" for its act of burying the debris, *Great American Insurance Company*, 608 So.2d at 986, the Court finds that foregoing testimony of Rome also provides an inference in favor of such a belief.[12]

Therefore, the Court denies summary judgment to National Union on this issue. National Union has failed to carry its burden of proving the applicability of the intentional injury exclusion on summary judgment. *Yount*, 627 So.2d at 151.

**10.** Exh. A to National Union's memorandum in support. (R.Doc. 211.)

**11.** *Id.*, p. 18.

**12.** Because the testimony of Rome establishes a genuine issue of material fact as to the applicability of the intentional injury exclusion as to the burying of debris, the Court does not reach the issue of the applicability of the exclusion to the dripping of tar. Even so, the Court finds that the testimony of Rome as to this issue, to the effect that he knew the dripping occurred, Deposition of Rome, p. 14–15 (Exh. A., R.Doc. 211), does not establish an absence of any genuine issues of material fact that Henkels & McCoy or Florida Gas had an intent to damage plaintiffs' property

### III. Contractor's Endorsement

■ The 1989–90 policy provides under the "Contractor's Endorsement" that, in pertinent part:

> In consideration of the premium paid, and notwithstanding anything contained in this policy to the contrary, it is agreed that such coverage as is afforded by this policy shall not apply to:
>
> \* \* \* \* \* \*
>
> (b) PROPERTY DAMAGE to property being installed, erected or *worked upon* by the insured, his agents or employees.[13]

National Union argues that under the plain language of this endorsement, which, "is clear and expresses the intent of the parties . . . [and] must be enforced as written," *FDIC v. Barham*, 995 F.2d 600, 603 (5th Cir.1993), *quoting Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 420 (La.1988), the 1989–90 policy excludes coverage because plaintiffs' "entire complaint is based upon the premise that plaintiffs' property upon which [Henkels & McCoy worked] was damaged by [Henkels & McCoy's] actions."[14]

Both Henkels & McCoy and Florida Gas counter that the property worked upon was actually the pipeline owned by Florida Gas, not plaintiffs' property, through which the pipeline runs. Henkels & McCoy also contends that this disagreement over the language in the "Contractor's Endorsement" signifies that the language is ambiguous and, hence, must be construed to effect, not deny, coverage. *Yount*, 627 So.2d at 151.

and/or a subjective belief that such a result was certain or substantially certain to follow. *Great American Insurance Company*, 608 So.2d at 985–86. Nor does that testimony establish an absence of genuine issues of material fact that a reasonable policy holder such as Henkels & McCoy would believe that the dripping of tar would not be covered by National Union's policy. *See Kinsey, supra.*

**13.** "Contractor's Endorsement," Exh. A, attached to National Union's "Motion and Memorandum in Support of Motion for Leave to File Exhibits." (R.Doc. 214.) (Emphasis added.)

**14.** National Union's memorandum in support, p. 11. (R.Doc. 211.)

The Court embraces Henkels & McCoy and Florida Gas' position that the language of the "Contractor's Endorsement," when read in context of the other words of § (b) of the endorsement, refers to actual property being worked on, such as the pipeline in this case, not to the property through which the pipeline traverses. Section (b) of the endorsement specifically refers to property "being installed, erected or worked upon." Quite obviously, this refers to the pipeline itself, not plaintiffs' land. Thus, construing the language of this exclusion as written, the Court denies National Union's motion for summary judgment as a matter of law.[15]

### IV. Professional Liability Exclusion

■ National Union's final contention is that the "Professional Liability Exclusion Endorsement" in the 1989–90 policy bars coverage. This endorsement provides:

In consideration of the premium charged [sic] it is agreed that the coverage afforded by this policy shall not apply to any act, error, omission, malpractice or mistake of a professional nature committed by or alleged to have been committed by the insured or any person for whom the insured is legally responsible and arising out of the insureds [sic] activities as a construction operations and engineering services [sic].[16]

Additionally, the "Contractor's Endorsement" contains a section excluding coverage for

PERSONAL INJURY OR PROPERTY DAMAGE arising out of any professional services performed by or on behalf of the insured, including the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.[17]

National Union theorizes that the pipeline refurbishment that forms the basis for this lawsuit constitutes professional services and

that, as a result, it is entitled to summary judgment. Further, because Henkels & McCoy followed the instructions of Florida Gas in burying the debris, it is also entitled to summary judgment.

In opposition, Henkels & McCoy asserts that because the work performed by its laborers was non-professional, policy coverage is not barred. Florida Gas asserts that while professional engineers drafted the standards which were to have been used during the project, it disputes that the applicable standards were followed. Further, Florida Gas contends that it performed no professional services leading to this litigation.

Louisiana law is clear as to what constitutes professional services and what does not.

In determining whether services are professional under Louisiana law, the court looks to the character of the services performed, such as whether special knowledge and technical expertise are required, rather than the title or character of the party performing the services. Acts which could have been done by an unskilled or untrained employee are not subject to a professional services exclusion. Professional services involve discretion acquired by special training and the exercise of professional judgment.

*Natural Gas Pipeline Company of America v. Odom Offshore Surveys, Inc.,* 697 F.Supp. 921, 928 (E.D.La.1988) (Wicker, J.), *aff'd,* 889 F.2d 633 (5th Cir.1989). *See also American Casualty Company v. Hartford Insurance Company,* 479 So.2d 577 (La.App. 1st Cir. 1985) (same).

The Court finds that National Union has failed to show an absence of genuine issues of material fact that the acts involved in the pipeline refurbishment, *i.e.,* removing the old coating/wrapping from the pipeline and replacing it with a new covering, were profes-

---

15. The Court also notes that, except for citation of *Barham, supra,* as to the manner in which to enforce the clear language of insurance policies, National Union cites no other cases in support of its argument.

16. "Professional Liability Exclusion Endorsement," Exh. A, National Union's "Motion and

Memorandum in Support of Motion for Leave to File Exhibits." (R.Doc. 214.)

17. Section (d), "Contractor's Endorsement," Exh. A, National Union's "Motion and Memorandum in Support of Motion for Leave to File Exhibits." (R.Doc. 214.)

sional in nature. National Union has failed to establish that these acts involved "discretion acquired by special training and the exercise of professional judgment." *Natural Gas Pipeline, supra.* The fact that the contract between Florida Gas and Henkels & McCoy contains engineering standards is inconsequential due to National Union's lack of any showing that reconditioning constitutes professional activities.[18] Thus, as the mover, National Union has failed to carry its burden on summary judgment. *Kinsey, supra.*

■ Finally, the Court notes that even if some but not all of these activities involve professional services, National Union is still not entitled to summary judgment. An insured only has to establish coverage for one claim; "additional uncovered claims do not vitiate the coverage." *In the Matter of Complaint of Stone Petroleum Corp.*, 961 F.2d 90, 91 (5th Cir.1992). *See also Gregoire v. AFB Construction Co., Inc.*, 478 So.2d 538, 541 (La.App. 1st Cir.1985). Because it is, at the very least, unclear as to whether some if not all of the claims made by plaintiffs arise out of non-professional activities on the pipeline reconditioning project, there is a genuine issue of material fact as to whether the professional services exclusion is applicable.

V. Conclusion

Because there are genuine issues of material fact as to whether the intentional injury exclusion in the 1989–90 policy is applicable, the Court denies this aspect of National Union's motion. Additionally, National Union is not entitled to summary judgment on the "Contractor's Endorsement" as a matter of law. Finally, the Court holds that National Union has failed to carry its burden on summary judgment of showing that the "Professional Liability Exclusion Endorsement" of the 1989–90 policy bars coverage and/or that there are genuine issues of material fact which preclude summary judgment.

Accordingly,

18. The engineering standards that are a part of the contract between Henkels & McCoy and Florida Gas are attached as Exh. A–1 to Florida Gas' opposition memorandum to Henkels & McCoy's motion for summary judgment regarding indemnity. (R.Doc. 224.) The Court also

IT IS ORDERED that the "Cross–Motion of Defendant National Union Fire Insurance Company of Pittsburgh, Pa., for Summary Judgment" is DENIED.

notes that the engineering standards at issue as far as plaintiffs' alleged damages are concerned refer to cleanup and do not entail complicated engineering tasks. *Id.*, "Engineering Standards," §§ 7503–2:2.1 and 7503–16:16.1.