**EOTT ENERGY PIPELINE LIMITED PARTNERSHIP Plaintiff**

**v.**

**HATTIESBURG SPEEDWAY, INC., Jerry K. Idom, T.H.E. Insurance Company, et al Defendants**

**No. CIV.A.2:01CV296PG.**

United States District Court, S.D. Mississippi, Hattiesburg Division.

Jan. 14, 2004.

Rick D. Norton, Douglas Chester Driggers, Bryan Nelson Randolph, Hattiesburg, MS, for Eott Energy Pipeline Limited Partnership, plaintiff.

William H. Jones, Law Office of William Harold Jones, Petal, Thomas L. Carpenter, Jr., Carr, Allison, Crawley & Bagwell, P.C., Gulfport, MS, for Hattiesburg Speedway, Inc., Jerry K. Idom, T.H.E. Insurance, Company, Unknown Defendants, "A" Through "H", defendants.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause comes before the Court on Defendant T.H.E. Insurance Company's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties having fully briefed the motion, it is now ripe for decision.

### FACTUAL BACKGROUND

Defendant Jerry K. Idom is the owner of Hattiesburg Speedway, Inc., which operates a race track on property under and through which Plaintiff EOTT Energy Pipeline operates and maintains a pipeline by virtue of a pipeline right-of-way duly filed of record in the appropriate land records of Forrest County, Mississippi. Hattiesburg Speedway obtained a commercial general liability policy of insurance from Defendant Insurance Company covering its racing operations.

While T.H.E.'s policy of insurance was in effect, Defendant Hattiesburg Speedway, Inc., in conducting its race track operations was grading the road to the race track with a motor grader. It is alleged that the operator of the motor grader caused the motor grader blade to strike Plaintiff's pipeline and rupture it causing an extensive and expensive oil spill. Plaintiff EOTT filed this suit against Hattiesburg Speedway and Jerry K. Idom based on negligence, as well as a Declaratory Judgment Action against Defendant T.H.E. Defendant to establish coverage, and seeking damages for (1) repair of the pipeline, (2) cost of cleaning up the oil spill, (3) cost of complying with regulatory authorities because of the spill, (4) cost of oil lost in the spill and (5) lost profits resulting from the disruption of oil deliveries through the pipeline. Both parties to this motion agree that it is appropriate for the

Court to determine the coverage that is applicable.

*STANDARD OF REVIEW*

Under Rule 12(b)(6) a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief.' " *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To be subject to dismissal under Rule 12(b)(6), a complaint must show on its face that plaintiff is entitled to no relief. *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986). " '[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim.' " *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 595–96 (E.D.Tex.1994). The parties agree that the Court should consider the insurance policy and interpret the exclusion clauses contained in the policy to determine coverage.

*CONTROLLING LAW*

Since this is a diversity case, this Court is *Erie* bound, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow decisions of the Mississippi Supreme and Appellate Courts. If these Courts have not spoken on an issue, and the Fifth Circuit has spoken on that issue, this Court is bound to follow the Fifth Circuit's interpretation of Mississippi law. If neither the Mississippi Courts nor the Fifth Circuit have spoken on an issue, then this Court is required to make an *Erie* guess, not as to what this Court, or some other federal court would do, but as to what the Mississippi Supreme Court would do if presented with these same issues. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.) (en banc), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986) ("[The Court] emphatically [is] not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best.")

*Rainwater v. Lamar Life, et al,* 207 F.Supp.2d 561, 565–66 (S.D.Miss.2002), amended by 246 F.Supp.2d 546 (S.D.Miss. 2003).

With regard to damages for repair of the pipeline itself, Defendant Insurance Company argues that "the Fifth Circuit does not appear to have directly answered this question ..." but argues that the Fifth Circuit's application of the pollution exclusion clause in other cases is a clear indication that the Fifth Circuit would apply the exclusion clause to those damages as well. (Defendant's Brief, page 9). Defendant makes no argument as to what the Mississippi Supreme Court would do. In 1996 the Fifth Circuit stated "[w]ith regard to insurance, Mississippi is a 'decision poor' state. Mississippi state courts have not interpreted any pollution exclusions." *American States Insurance Company v. Nethery*, 79 F.3d 473, 474 (5th Cir.1996).

Apparently the Mississippi Supreme Court has yet to decide a case involving a pollution exclusion of any kind in an insurance policy. Federal district courts in Mississippi, interpreting Mississippi law, have interpreted pollution exclusion clauses and the Fifth Circuit has as well, *American States, supra*. To further complicate the analysis, this case is considerably different from a factual standpoint than any of the cases analyzed by this Court. First, this is the only case involving discharge of a pollutant that was either owned by, or under the control of, a third party, not the insured. All of the cases analyzed by this Court involved discharge of a pollutant that was in the possession or under the

control of the insured when it was released. A second distinction is that the exclusion clause in most of the cases analyzed excluded only intentional pollution not pollution that was occasioned by an incident that occurred accidentally and suddenly. The clause involved in this case is a total pollution exclusion. A third distinction is that one can make a reasonable and logical argument that the discharge of the pollutant did not cause the damage to the pipeline, nor the loss of product, nor lost profits, but that these three items of damages were caused by the puncturing of the pipeline by the motor grader blade. As to the damages for cleanup and complying with regulations, one can make a plausible argument that both the penetration of the pipeline and the escape of the pollutants were joint instrumentalities in causing these two items of damage. Hence, this is a case of first impression. It cannot be overemphasized that it is Mississippi substantive law that controls in this case.

## MISSISSIPPI LAW ON CONSTRUCTION OF INSURANCE POLICIES IN GENERAL

The Mississippi Supreme Court in *Lewis v. Allstate Ins. Co.*, 730 So.2d 65 (Miss. 1998), reviewed Mississippi law relating to interpreting insurance policies, and held:

> The interpretation of insurance policy language is a question of law. (citation omitted). Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. (citation omitted). Under Mississippi law, ambiguous and unclear policy language must be resolved in favor of the insured. (citation omitted). Further, provisions that limit or exclude coverage are to be construed liberally in favor of

the insured and most strongly against the insurer. (citation omitted).

At 68.

■■■ In *American Hardware Mutual Ins. Co. v. Union Gas Co.*, 238 Miss. 289, 118 So.2d 334, 335 (1960), Judge Ethridge writing for the Mississippi Supreme Court cited 29 Am.Jur., Insurance, Sec. 264, wherein it was stated "[t]he rule is well established" that ambiguous exceptions "will be construed strictly against the insurer, and liberally in favor of the insured, in order that the purpose of insurance shall not be defeated." *Id.* at 335. Such ambiguities must be construed in favor of coverage. *Nationwide Mutual Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss.1994). In *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.2d 550, 551–52 (Miss.1998), the Mississippi Supreme Court stated that an ambiguity exists when a provision in an insurance policy is subject to more than one reasonable interpretation, and that ambiguities are to be construed liberally in favor of the insured. The Mississippi Supreme Court has "recognized the need to protect insureds because of their uneven bargaining power in dealing with insurance companies." *U.S.Fidelity & Guar. Co. v. Ferguson*, 698 So.2d 77, 80 (Miss.1997).

## APPLYING MISSISSIPPI LAW TO THE POLLUTION EXCLUSIONS IN QUESTION

T.H.E. argues that there is no coverage for Plaintiff's damages due to its "Total Pollution Exclusion Endorsement" which provides

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dis-

persal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

The parties agree that the oil which escaped from Plaintiff's pipeline was a "pollutant."

Defendant primarily relies on Fifth Circuit decisions interpreting pollution exclusion clauses in cases in which the exclusion was applied to a discharge of pollution that was owned by or under the control of the insured when it was released. Plaintiff primarily relies on *Motorists Mutual Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky.App. 1996), a case which also involved a total pollution exclusion. In *RSJ* the Kentucky Court of Appeals was confronted with a situation in which an insured dry cleaning business was sued by adjacent landowners because a vent pipe from the dry cleaning business leaked carbon monoxide causing personal injury. The Court in *RSJ* analyzed a number of cases from various jurisdictions that had addressed this issue and concluded that the "pollution exclusion" was ambiguous "when applied to the incident giving rise to this appeal." *Id.* at 681. That Court cited *West American Ins. Co. v. Tufco Flooring East, Inc.*, 104 N.C.App. 312, 409 S.E.2d 692 (1991), *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617,

624 (1995), *Morton International, Inc. v. General Accident Ins. Co.*, 134 N.J. 1, 629 A.2d 831 (1993), and *United Pacific Ins. v. Van's Westlake Union*, 34 Wash.App. 708, 664 P.2d 1262 (1983), all cases in which pollution exclusion clauses were held to be ambiguous, as well as an annotation, "Construction and Application of Pollution Exclusion Clause in Liability Insurance Policy," 39 A.L.R.4th 1047. The Court in *RSJ* quoted from *Sullins, supra,* stating:

"Some courts hold that the existence of conflicting judicial interpretations of insurance policy terms is evidence of ambiguity, while others hold such conflict is not conclusive. (Citation omitted).... We hold that the conflicting interpretations of policy language in judicial opinions is not determinative of, but is a factor to be considered in determining the existence of ambiguity."

926 S.W.2d at 681. The *RSJ* Court wrote we perceive the split in authority to be but one factor to be evaluated in passing on the ambiguity of the exclusion.

A second factor relevant to our inquiry is the basic premise that terms used in insurance contracts "should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them" (citation omitted). *Id.* The Court cited the "exclusion's historical objective— avoidance of liability for environmental catastrophes related to intentional industrial pollution," analyzed the development of the exclusion clause and recited a quotation from the president of INA that "INA will continue to cover pollution which results from an accidental discharge of effluents— the sort of thing that can occur when equipment breaks down. We will no longer insure the company which knowingly dumps its wastes." *Id.* at 682. The Court noted that the insurance industry had formed a group to draft the policy exclusion clause and that

"[a]ccording to one member of the drafting committee, the pollution-exclusion clause allowed the underwriters 'to perform their traditional function as insurers of the unexpected event or happening and yet ... [did] not allow an insured to seek protection from his liability insurers if he knowingly pollute[d].'" *Id.* The Court cited *Morton International, supra,* which the *RSJ* Court said held "that the provision was meant solely to deprive coverage to active polluters and did not apply where the damage caused was neither expected nor intended." *Id.* In affirming the trial court's conclusion that there was an ambiguity and therefore the exclusion was inapplicable, the *RSJ* Court said "we are convinced that an ordinary business person would not apprehend the provision as excluding coverage for the type of damage incurred through an unexpected leak in a vent pipe." *Id.*

■ In the *United Pacific* case, cited by the *RSJ* Court, decided in 1983, the Court said

[t]he courts which have considered the relatively new pollution exclusion clause have almost unanimously held it to be ambiguous. *See Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.,* 347 So.2d 95, 99 (Ala. 1977); *Niagara Cy. v. Utica Mut. Ins. Co.,* 103 Misc.2d 814, 427 N.Y.S.2d 171 (N.Y.Sup.Ct.1980), aff'd, 80 A.D.2d 415, 439 N.Y.S.2d 538 (1981); *A–1 Sandblasting & Steamcleaning Co. v. Baiden,* 53 Or.App. 890, 632 P.2d 1377, 1379 (1981); and *Jackson Township Mun. Utils. Auth. v. Hartford Accident & Indem. Co.,* 186 N.J.Super. 156, 451 A.2d 990 (1982).

664 P.2d at 1265. This Court is somewhat at a loss to know what the Mississippi Supreme Court would do if presented with this issue. Do the conflicting decisions interpreting pollution exclusion clauses create an ambiguity? Is the exclusion ambiguous because it does not state whose pollutant must be involved in the discharge for the exclusion to apply? Is the exclusion ambiguous because it does not address whether the discharge of the pollutant must be the actual cause of the excluded damages as contrasted with the damages being caused by another instrumentality or agency, i.e., the alleged negligent operation of the motor grader?

It seems to this Court that the Mississippi Supreme Court, in general, has interpreted insurance policies rather liberally to provide coverage. As the Court said in *Lewis, supra,* "provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." 730 So.2d at 68. But, likewise the Mississippi Supreme Court has rather steadfastly followed the principle that "generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the Court will afford them their plain ordinary meaning and will apply them as written." *Id.*

If this issue were presented to the Mississippi Supreme Court, the Court is not quite sure which of these last two enunciated principles would be given greater emphasis or preference by the Mississippi Supreme Court as to the pollution exclusion clause in the policy in question under the specific facts of this case. Consequently, if this Court had the power to do so, it would certify this issue to the Mississippi Supreme Court. However this Court does not have such authority and must make an *Erie* guess.

■ The federal Courts in Mississippi have generally given effect to pollution exclusions. *See U.S.Fidelity & Guar. Co. v. B & B Oil Well Serv. Inc.,* 910 F.Supp. 1172 (S.D.Miss.1995); *American States Ins. Co. v. F.H.S., Inc.,* 843 F.Supp. 187 (S.D.Miss.1994); *U.S. Fidelity & Guar. Co. v. T.K. Stanley, Inc.,* 764 F.Supp. 81

(S.D.Miss.1991). But the Mississippi Supreme Court if presented with this issue could very well follow the reasoning set out in *RSJ*. Regardless, the Court cannot escape the conclusion that the language in the pollution exclusion in this policy as it applies to the losses resulting from (1) the cost of cleaning up the oil spill, (2) the cost of complying with regulatory authorities because of the spill, and (3) the cost of the oil lost in the spill are specifically and unambiguously excluded. The Court comes to this conclusion because of the specific language contained in the pollution exclusion that "this insurance does not apply to: .... 'property *damage' which would not have occurred ... but for the actual ... discharge ... release or escape of 'pollutants' at any time.*" (emphasis added). (f(1) of Exclusion.) The excluding language is specific that property damage is excluded if it would not have occurred, "but for the ... escape of 'pollutants' at any time." Further, subsection f(2) of the pollution exclusion specifically excludes the cost of cleanup and complying with any governmental regulation.

The damage for the repair of the pipeline is clearly not excluded by the pollution exclusion. Damage to the pipeline was not caused by the release of the pollutant. Damage to the pipeline was caused by the motor grader blade striking the pipe. If the pipeline had been empty at the time of the puncture, and there had been no escape of pollutant, this damage (repair of the pipeline) would have been the same. Consequently, the policy covers damage relating to repair of the pipeline.

Likewise the loss of profits, after the initial escape of the oil was not caused by the "discharge" of the pollutant, but was caused by the puncture of the pipeline by the motor grader blade. These damages, loss of profits, were due to the fact that the pipeline had been damaged and could not be in service. Consequently, the exclusion does not preclude coverage for lost profits that occurred from the time the pipeline was shut down due to the damage until the repair was completed, because this damage was caused by the alleged negligence of the motor grader in puncturing the pipeline and not by the escape of the pollutant. Such lost profits are not excluded by the policy exclusion. The Court does not reach the question of whether or not lost profits is "property damage" as contemplated in the exclusion.

One can make a public policy argument as discussed in the *RSJ* case, *supra*, that the average business person purchasing a commercial liability policy would understand that in conducting his business he is protected against the risk of a sudden or accidental incident. Not so, if a pollutant is involved and a pollution exclusion is attached to the policy. Perhaps it should be required even as to pollution, that sudden and accidental incidents are covered unless an insured specifically waives such coverage in writing, as is done in the field of uninsured motorist coverage. But that is a policy question that should be adopted by the legislature, not the courts, and certainly not by this federal court sitting in diversity jurisdiction.

In view of the fact that the Mississippi Supreme Court has not addressed this issue, in view of the split in authority, in view of the distinctions between the facts of this case and the facts of other cases in which a pollution exclusion clause has been upheld, in view of the fact that the pollution exclusion clause involved in this case does not address ownership of the pollutant, whether the discharge of the pollutant must cause the excluded damages or whether the discharge must be sudden and accidental and in view of the public policy pronouncements by the Mississippi Supreme Court that exclusion clauses should be "construed liberally in

favor of the insured and most strongly against the insurer," this Court is of the opinion that there is substantial ground for difference of opinion as to this question and that this order involves a controlling question of law and that an immediate appeal from this order might materially advance the ultimate termination of this litigation. Accordingly, the Plaintiff may seek an interlocutory appeal, under Section 1292, within ten days of the entry of this order, with permission of the Appellate Court, if Plaintiff desires. If Plaintiff elects to file an interlocutory appeal in this matter, this cause will be stayed until the Fifth Circuit rules. The Fifth Circuit has the power to certify this question to the Mississippi Supreme Court, whereas this Court does not have any such power.

### APPLICATION OF MISSISSIPPI LAW UNDER "YOUR WORK" EXCLUSION

■ Defendant T.H.E. argues that even if the pollution exclusion clause in the policy does not preclude coverage, nevertheless Section 1(2)(j) of the policy precludes coverage. Because this Court has determined that the damages for repair of the pipeline are not excluded, the Court must also address this issue. Hopefully this will also avoid the potential for having to do justice in halves. The referenced exclusion is as follows

This insurance does not apply to:

j. Damage to property
   *Property damage to:*
   (5) *That particular part of real property on which you* or any of your contractors or subcontractors working directly or indirectly on your behalf *are performing operations,* if the property damage arises from those operations; or
   (6) *That particular part of any property that must be* restored, *repaired,* or

replaced *because your work was incorrectly performed on it.*
(emphasis added).

This Court is of the opinion that there can hardly be a question but what Plaintiff's interpretation as to this clause is a reasonable interpretation. If that is true, and this Court finds that it is true, then under Mississippi law, this exclusion must be strictly construed against the insurance company and liberally in favor of the insured. This exclusion does not preclude coverage under the facts of this case. The exclusion of property damage to "that particular part of real property on which you ... are performing operations" does not exclude coverage in this case. Likewise, the exclusion as to "that particular part of any property that must be ... repaired ... because your work was incorrectly performed on it" does not preclude coverage. The reason is very simple. Hattiesburg Speedway was not working on Plaintiff's pipeline. Hattiesburg Speedway was working on the road above Plaintiff's pipeline. Hattiesburg Speedway did not intend to come in contact with the pipeline in any manner whatsoever. Consequently, the pipeline was not "real property on which" Hattiesburg Speedway was "performing operations." Neither was the pipeline property that the "work was incorrectly performed on." The "it" referenced in this exclusion was the road, not the pipeline. Accordingly, the "your work" exclusion does not exclude any of the damages sought in this case.

A sister federal court in the Fifth Circuit, interpreting Louisiana law, in *Abramson v. Florida Gas Transmission Co.,* 908 F.Supp. 1389 (E.D.La.1995), reached the same conclusion although under a converse factual situation. That case involved damage done to land belonging to a third party while the insured was reconditioning a natural gas pipeline that ran through the land

of the third party. The Court concluded that the exclusion for damage done "to property being ... worked upon by the insured" did not exclude damage done to land through which the pipeline involved ran. The Court in that case concluded that the "property ... worked upon" was the pipeline and not the property through which the pipeline traverses saying "quite obviously this refers to the pipeline itself, not plaintiff's land." *Id.* at 1394.

CONCLUSION

This Court being forced to make an *Erie* guess as to what the Mississippi Supreme Court would do if confronted with this issue grants Defendant Insurance Company's Motion to Dismiss as to Plaintiff's claims for (1) cost of cleaning up the oil spill, (2) cost of complying with regulatory authorities and (3) cost of oil lost in the spill. Defendant Insurance Company's Motion to Dismiss is denied as to Plaintiff's claim for costs incurred in (1) repairing the pipeline and (2) lost profits. If the Fifth Circuit consents, Plaintiff may interlocutorily appeal this Order under 28 U.S.C. Section 1292, within ten days.