**INDEPENDENT PETROCHEMICAL CORPORATION, et al., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, et al., Defendants.**

Civ. A. No. 83–3347.

United States District Court, District of Columbia.

March 8, 1985.

Jerold Oshinsky, Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiffs.

Stephen L. Nightingale, Washington, D.C., for Aetna Cas. & Sur. Co.

Lawrence E. Carr, Jr., Washington, D.C., for Continental Ins. Co.

John P. Arness, Washington, D.C., for Hartford Acc. & Indem. Co.

Dennis Flannery, Washington, D.C., for Ins. Co. of North America.

Barry R. Ostrager, New York City, for Travelers Indem. Co.

Richard H. Gimer, Washington, D.C., for American Employers' Ins. Co.

Michael Nussbaum and Earl C. Dudley, Jr., Richard H. Gimer, Santarelli & Bond, James C. Gregg, James W. Greene, John P. Arness, Robert E. Heggestad, Casey, Scott & Canfield, P.C., Washington, D.C., for defendants.

James P. Schaller and M. Elizabeth Medaglias, Jackson & Campbell, Washington, D.C., for American Home Assur. Co., Ins. Co. of the State of Pa., and Lexington Ins. Co.

Jas. T. Wharton, Rockville, Md., James C. Gregg and James C. Greene, Washington, D.C., for Midland Ins. Co.

Robert F. McDermott, Jr., Lawrence P. Postol, Jones, Day, Reavis & Pogue, Edward J. Gorman, Jr., Bethesda, Md., for Corporate Ins. & Reinsurance Co.

Paul L. Friedman, Carolyn B. Lamn, Craig Alan Wilson, Washington, D.C., for Pacific Indem. Co.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court on a motion by certain tort claimants to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure in this declaratory judgment action. Plaintiffs in the underlying litigation seek a determination of their rights and the defendant insurance companies' obligations with respect to the defense and indemnification of civil actions brought against plaintiffs arising out of instances of alleged dioxin contamination in Missouri. The tort claimants moving to intervene claim that disposition of this matter may result in a practical impairment of their ability to collect on any judgment they ultimately obtain against plaintiff Independent Petrochemical Corp., and

that their interests are not being adequately protected by any existing party to this action. For reasons discussed herein, the court shall deny the motion by tort claimants to intervene.

*Background*

The underlying litigation in this matter involves a declaratory judgment action by Independent Petrochemical Corp. ("IPC") and its two parent corporations, The Charter Company ("TCC") and Charter Oil Company ("COC"),[1] against twenty-three insurance companies[2] to determine the obligations of those insurers to defend plaintiffs against personal injury and property damage claims arising out of alleged dioxin contamination in Missouri.[3] This action has been stayed since May 1984 based on an interim agreement providing for funding by four of the insurers of plaintiffs' defense against the pending tort claims. That interim agreement also provided for further negotiations looking toward a final settlement with respect to the defense of the claims and responsibility for settlements or judgments, if any, for which plaintiffs may ultimately become liable.

On April 20, 1984, plaintiffs filed voluntary petitions for business reorganizations under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, where TCC is headquartered. As a result, all of the tort litigation pending against plaintiffs was automatically stayed. On June 22, 1984, the Bankruptcy Court lifted the automatic stay solely with respect to IPC and the tort claimants seeking to intervene here. According to that order, the tort claimants were "granted relief from the automatic stay in order to proceed to judgment or otherwise liquidate their claims" against IPC, and were allowed to "collect any judgments, settlements, or other liquidated claims" against IPC to the extent that those claims can be satisfied from the insurance coverage available to IPC. *In re The Charter Oil Co., et al.*, Nos. 84–289–BK–GP, 84–314–BK–GP, 84–326–BK–J–GP (Bankr.M.D.Fla., June 22, 1984). The motion by these tort claimants to intervene in this action was filed shortly after the entry of that order.

The motion to intervene has been opposed by twenty of the twenty-two remaining defendants,[4] as well as by plaintiffs. Separate briefs have been filed only by plaintiffs and defendants Hartford Accident & Indemnity Co. ("Hartford") and Aetna Casualty and Surety Co. ("Aetna"), with the remaining defendant insurance companies adopting the oppositions of Hartford and Aetna.[5] As the arguments in

---

1. COC is a stock holding company which owns all of IPC's stock. TCC is a publicly-owned stock holding company which, in turn, owns all of the stock of COC.

2. Insurance companies named in the original suit as defendants are: Aetna Casualty & Surety Co., Hartford Accident & Indemnity Co., First State Insurance Co., Insurance Co. of North America, American Employers' Insurance Co., Commercial Union Insurance Co., The Travelers Indemnity Co., American Home Assurance Co., The Insurance Company of the State of Pennsylvania, Lexington Insurance Co., Harbor Insurance Co., American Re-Insurance Co., Unigard Mutual Insurance Co., Continental Casualty Co., Mission Insurance Co., North Star Reinsurance Corp., United States Fire Insurance Co., Certain Underwriters at Lloyd's and Companies in the London Market, Pacific Indemnity Co., Midland Insurance Co., The Continental Insurance Co., Corporate Insurance & Reinsurance Co. Ltd., and Stonewall Insurance Co. Defendant Corporate Insurance and Reinsurance Co. Ltd. was subsequently dismissed as a party to this suit.

3. Since December 1982, forty-one civil actions have been filed against one or more of the plaintiffs, arising from the alleged involvement of IPC in the disposal of dioxin-contaminated waste at various sites in Missouri, including a number of locations near Times Beach and Imperial, Missouri. These lawsuits have been filed by several hundred individual tort claimants, as well as by the state of Missouri and the United States Environmental Protection Agency, the latter seeking reimbursement of remedial costs incurred in cleaning up various sites that were contaminated by dioxin.

4. Defendants First State Insurance Co. and United States Fire Insurance Co. have not opposed the tort claimants' motion to intervene.

5. Sixteen of the defendant insurance companies jointly filed a supplemental memorandum in opposition to the motion to intervene in response to this court's Order of December 5, 1984, which was adopted by the so-called "London defendants" and Midland Insurance Co.

all three oppositions are similar, the court shall refer to them jointly rather than addressing each opposition separately.

*Discussion*

A. Rule 24(a)(2)

■ Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, an applicant for nonstatutory intervention must make a timely motion, and must demonstrate: (1) an interest in the subject matter of the action, (2) which the applicant may be impeded in protecting because of the action, (3) that is not adequately represented by an existing party. *See Nuesse v. Camp*, 385 F.2d 694, 699 (D.C.Cir.1967); 3B J. Moore's Federal Practice ¶ 24.07[1] (1982). As no claim has been made by the parties opposing intervention that the application by tort claimants was not timely, the focus here shall be on the latter requirements, which plaintiffs and defendants contend that the tort claimants have failed to satisfy.

B. Tort claimants' "interest"

The parties opposing intervention first claim that the tort claimants have no "interest" in the subject matter of this action sufficient to satisfy the requirements of rule 24(a)(2). Opponents characterize the interest which a putative intervenor must have as "a direct, substantial, legally protectable interest in the proceedings," Plaintiffs' Statement of Points and Authorities in Opposition to Tort Claimants' Motion to Intervene at 7, 10 [hereinafter cited as Plaintiffs' Opposition], "a present, substantial interest [in the subject matter of the action] as distinguished from a contingent interest or mere expectancy," Defendant Hartford Accident & Indemnity Company's Opposition to Tort Claimants' Motion to Intervene at 9 [hereinafter cited as Hartford Opposition], or a "direct, non-contin-

gent, substantial and legally protectable interest," Opposition of Defendant Aetna Casualty and Surety Company to Motion to Intervene at 8 [hereinafter cited as Aetna Opposition]. The parties opposing intervention refer to these "general standards" as "well-recognized." It is clear, however, that courts have long recognized the ambiguity inherent in the use of the term "interest" in rule 24(a)(2),[6] and that attempts to interpret the rule narrowly based on a definition of that term have been repeatedly rejected in this jurisdiction.

Since 1967, the approach taken by this jurisdiction in determining whether a potential intervenor as of right satisfies the "interest" requirement under rule 24(a)(2) has been to look to the "practical consequences" of denying intervention, rather than to "revert to a narrow formulation that 'interest' means 'a specific legal or equitable interest in the chose.'" *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967); *see also Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C.Cir.1981). Recognizing that the 1966 amendments to rule 24 were designed to liberalize the right to intervene in federal actions, *see Nuesse*, 385 F.2d at 701, the *Nuesse* court characterized the interest test as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse*, 385 F.2d at 700.

This liberal formulation of the "interest" test has repeatedly been reaffirmed in this jurisdiction[7] since 1969, when the court of appeals declined an invitation by the district court in *Hobson v. Hansen* to require "a direct, substantial, legally protectable interest in the proceedings" as a prerequisite to intervention as of right. 44 F.R.D. 18, 23–24 (D.D.C.1968). When *Hansen*

---

The Insurance Company of North America filed a separate supplemental opposition.

**6.** *See Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 203–04 (7th Cir.1982); *Rosebud Coal Sales Co. v. Andrus*, 644 F.2d 849, 850–51 & n. 3 (10th Cir.1981) (per curiam); *Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir.1977); *United States v. Perry County Bd. of Education*, 567 F.2d 277, 279 (5th Cir.1978); *Nuesse v.*

*Camp*, 385 F.2d 694, 700 (D.C.Cir.1967); *see also* 3B J. Moore's Federal Practice ¶ 24.07[2].

**7.** *See, e.g., Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C.Cir.1981); *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1291–93 (D.C.Cir. 1980); *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 909–11 (D.C.Cir.1977).

came before the D.C. Circuit on appeal, the court reiterated the standard set in *Nuesse,* criticizing any "effort to extract substance from the conclusory phrase 'interest' or 'legally protectable interest.'" *Smuck v. Hobson,* 408 F.2d 175, 178 (D.C.Cir.1969). The "true inquiry" in the context of a motion to intervene "is not whether a lawsuit should be begun, but whether already initiated litigation should be extended to include additional parties." *Id.* at 179. Thus, the determination of whether or not a party should be allowed to intervene as of right should be guided not by "a myopic fixation upon interest," but by the policies behind the interest requirement.[8]

The court's inquiry, then, is to determine whether circumstances are such that "[t]he goal of 'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process' may ... be met" by allowing intervention. *Smuck,* 408 F.2d at 178. In making this determination, the *Smuck* court pointed out that the first requirement of rule 24(a)(2), that of an "interest" in the transaction, "may be a less useful point of departure than the second and third requirements, that the applicant may be impeded in protecting his interest by the action and that his interest is not adequately represented by others." *Id.* An "interest" in the subject of the action is thus a threshold requirement, rather than the determinative criterion for intervention. *See id.* at 179–80; *County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir.1980); *Blake v. Pallan,* 554 F.2d 947, 952 (9th Cir.1977).

■ In determining whether the tort claimants possess an interest sufficient to meet this threshold requirement, neither the parties nor the putative intervenors have been able to cite to any case in this jurisdiction in which a movant whose tort claim is wholly contingent on his ability to obtain a judgment in a separate suit has been allowed to intervene as of right in a case such as this one. The parties opposing intervention have, however, cited three district court decisions that refused to recognize a potential claimant's right to intervene in an action by an insured against its insurer to determine the existence or extent of coverage. *See Jet Traders Investment Corp. v. Tekair, Ltd.,* 89 F.R.D. 560 (D.Del.1981); *Liberty Mutual Insurance Co. v. Pacific Indemnity Co.,* 76 F.R.D. 656 (W.D.Pa.1977); *Kheel v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.,* 45 F.R.D. 281 (S.D.N.Y.1968). While the jurisdictions in which those courts are located have not necessarily adopted the liberal approach to intervention as of right which governs disposition of rule 24(a) motions in the District of Columbia, the court nevertheless concludes that at a minimum, an intervenor must demonstrate more than "a mere provable claim" in order to satisfy the threshold interest required by the rule. *See Liberty Mutual,* 76 F.R.D. at 659; *see also Kheel,* 45 F.R.D. at 284. Until the tort claimants have obtained a judgment against these plaintiffs, their interest in the subject matter of this litigation is purely hypothetical. Absent a present, noncontingent interest in the insurance policies at issue in the underlying declaratory judgment action, the tort claimants lack the "significantly protectable interest" required for intervention as of right under *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580

---

8. *Id.; see also* C. Wright & A. Miller, Federal Practice and Procedure § 1908. This approach is consistent with the Supreme Court's decision in *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), where the Court implicitly rejected the notion that a specific legal or equitable interest is required to intervene as of right. *Id.* at 132–36, 87 S.Ct. at 935–37; *see also Blake v. Pallan,* 554 F.2d 947, 952 (9th Cir.1977). *Cascade* reflected an expanded application of the rule's interest requirement, holding that a state, a customer, and a competitor all had interests sufficient to intervene as of right in an antitrust divestiture proceeding when that interest was inadequately represented by existing parties. *Id.; see also* 3B J. Moore's Federal Practice ¶ 24.07[2]. The Court's subsequent determination in *Donaldson v. United States* that the rule's interest requirement "obviously mean[s] ... a significantly protectable interest," 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971), has not been held to have affected the approach of this circuit to intervention as of right.

(1971). Even if the liberal approach to rule 24(a) intervention adopted in this jurisdiction were deemed to mandate a holding that the tort claimants have a sufficient interest in this litigation, however, neither of the remaining requirements for intervention as of right have been met.[9]

### C. Intervenors' ability to protect their interests

Even were the court to decide that the tort claimants have an interest relating to the subject of this action, the court would be unable to conclude that denying intervention would impede them in protecting that interest. The tort claimants argue that if they are not allowed to intervene, the parties may reach a settlement which provides less than the fullest possible coverage for IPC, resulting in a substantial and immediate impairment of the applicants' interests. *See* Motion to Intervene at 5. Plaintiffs and defendants, on the other hand, argue that any settlement agreement in this litigation would have to be approved by the Bankruptcy Court after a hearing at which the tort claimants and others would have an opportunity to inquire into and challenge any settlement reached by the parties. *See* Plaintiffs' Opposition at 11; Hartford Opposition at 8–11, 16; Aetna Opposition at 8–9, 12.

The availability of another forum in which applicants could protect their interests is not necessarily sufficient to prevent the tort claimants from satisfying this requirement of rule 24(a)(2). In *Natural Resources Defense Council v. Costle*, 561 F.2d 904 (D.C.Cir.1977), this court denied intervention to several industrial groups which sought to participate in a settlement agreement whereby the Environmental Protection Agency would promulgate certain regulations pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* The court of appeals reversed, holding that even though the groups seeking to intervene could still contest the legality of the regulations adopted pursuant to the settlement agreement, those groups had an interest in the content of the regulations as well, and thus should have been permitted to intervene as of right. *Id.* at 909–11. Here, in contrast, the court will not be so "intimately involved" in any settlement reached by the parties. *See Environmental Defense Fund, Inc. v. Costle*, 79 F.R.D. 235, 239–40 (D.D.C.1978). In fact, the ultimate approv-

9. The parties opposing intervention also argue that because Missouri law does not permit a declaratory judgment action by a tort claimant against an insurer prior to final judgment, the tort claimants have no right to join plaintiffs' insurers in this action in advance of judgment. *See* Aetna Opposition at 9–11. Indeed, counsel for Hartford contended at oral argument that "[t]here has never been an intervention of right granted ... in a situation where the plaintiff could not have ... maintained an action in its own right." Transcript at 38. Yet the notion that a party seeking to intervene pursuant to rule 24(a)(2) must possess the standing necessary to initiate the lawsuit is clearly no longer tenable after the Supreme Court's decision in *Trbovich v. United Mine Workers of America. See Trbovich,* 404 U.S. 528, 531–37, 92 S.Ct. 630, 633–35, 30 L.Ed.2d 686 (1972); *see also United States Postal Service v. Brennan,* 579 F.2d 188, 190 (2d Cir.1978); *United States v. Imperial Irrigation District,* 559 F.2d 509, 521 (9th Cir.1977), *rev'd on other grounds sub nom. Bryant v. Yellen,* 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980); *Smuck v. Hobson,* 408 F.2d at 178–79; 3B J. Moore's Federal Practice ¶ 24.07[2] (1982). The *Trbovich* Court held that intervention by union members in a suit by the Secretary of Labor presented no interference with the objectives of a statute making suit by the Secretary the "exclusive" remedy for violation of that statute. *Trbovich,* 404 U.S. at 536–37, 92 S.Ct. at 635. Similarly, in *Foster v. Gueory* the court of appeals held that it was error to deny intervention in a Title VII employment discrimination suit to intervenors who had failed to timely file charges with the EEOC, even though failure to file charges would have precluded the intervenors from filing Title VII suits in their own right. *See Foster,* 655 F.2d 1319, 1322–23 (D.C. Cir.1981).

Further, opponents' position misconstrues the nature of the court's inquiry in a motion for intervention as of right. As the court in *Smuck* made clear, the issue here is not whether the parties seeking to intervene could initiate their own lawsuit, but rather "whether already initiated litigation should be extended to include additional parties." 408 F.2d at 179. Therefore, the contention that applicants should be barred from intervention as of right because they could not sue directly under Missouri law is without merit.

al of any settlement will come not from this court, but from the Bankruptcy Court. No action by this court in this case will circumscribe the access of the tort claimants to further proceedings before the Bankruptcy Court, where they will have a full opportunity to review and challenge any settlement which does not fully protect the interests of the claimants of Independent Petrochemical Corp. Therefore, the court holds that looking to the "practical consequences" of denying intervention, the applicants' ability to protect their interests will not be impeded if their motion to intervene is denied.

Further, a decision allowing the tort claimants to intervene here would unavoidably interfere with the efficient disposition of this litigation. In addition to the tort claimants presently seeking intervention, thousands of other individuals have brought claims against IPC, any or all of whom may seek to intervene if the motion of this group of claimants is granted. In addition, both the federal Environmental Protection Agency and the state of Missouri have filed claims against IPC, each of which would likely represent an interest distinct from that represented by the tort claimants. In sum, granting this motion for intervention would likely result in a flood of intervention motions by other "apparently concerned persons" whose participation would clearly be incompatible with the efficient disposition of this lawsuit. *See Nuesse,* 385 F.2d at 700. This conclusion is particularly compelling in light of the fact that any settlement reached here will not dispose of the issue of the obligation of these insurers to IPC, since any such agreement would require Bankruptcy Court approval. Rather than promote efficiency, intervention would compel confusion and delay, as any claimant who did not believe his interests adequately protected by a settlement could re-raise his challenges before the Bankruptcy Court.

#### D. Adequacy of representation by existing parties

Even if an applicant for intervention as of right demonstrates an interest in the subject of the action which he may be impeded in protecting if not allowed to intervene, intervention as of right will still be denied if the applicant's interest is adequately protected by existing parties. Fed. R.Civ.P. 24(a)(2). The parties opposing intervention argue that both the tort claimants and plaintiffs seek precisely the same result in the underlying litigation—maximum insurance coverage for plaintiffs. Therefore, they argue, the tort claimants have failed to make the "compelling showing" of inadequate representation which they argue is required by the Federal Rules. *See* Hartford Opposition at 14 n. 9; *see also* Aetna Opposition at 11–13; Plaintiffs' Opposition at 12–13. Although plaintiffs and defendants have overstated the probable identity of interests between the tort claimants and all of the plaintiffs, the court is unable to find that the interests of the proposed intervenors will not be adequately represented by Independent Petrochemical Corp.

It must be pointed out that, contrary to the assertion of the parties opposing intervention, a party seeking to intervene as of right need only show that the representation of his interest "may be inadequate," and that this burden is "miminal." *Trbovich,* 404 U.S. at 538 n. 10, 92 S.Ct. at 636 n. 10; *Natural Resources Defense Council v. Costle,* 561 F.2d 904, 911 (D.C. Cir.1977); *see also Securities and Exchange Comm'n v. Dresser Industries, Inc.,* 628 F.2d 1368, 1390 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Further, it frequently has been stated in this circuit that the burden of persuasion on this issue "is on those opposing intervention to show that representation for the absentee will be adequate." *See United States v. American Tel. and Tel. Co.,* 642 F.2d 1285, 1293 (D.C.Cir.1980); *Dresser,* 628 F.2d at 1390; *Smuck,* 408 F.2d at 181; *Nuesse,* 385 F.2d at 702; *see also* C. Wright & A. Miller, Federal Practice and Procedure § 1909 (if other conditions of rule are satisfied, intervenor should be allowed in *unless* court is persuaded that representation by existing parties is in fact adequate).

In the case at bar, it is hardly "clear" that each of the existing parties will "undoubtedly" make the same arguments that the tort claimants would advance if allowed to intervene. In fact, to the extent that it is possible to achieve a settlement providing greater coverage to the Charter entities than to IPC, the interests of The Charter Co. and Charter Oil Co. would appear to diverge rather sharply from those of Independent Petrochemical Corp. Nevertheless, IPC's survival appears to be solely dependent upon its ability to obtain the maximum insurance coverage available to it under its policies with defendants. On that basis, it is impossible to conclude that, absent a breach of fiduciary duty, IPC would relinquish its right to coverage for the proposed intervenors' claims. Thus, the court holds that the tort claimants will be adequately represented by IPC.[10]

### E. Conclusion

In sum, the court holds that the proposed intervenors have failed to demonstrate an "interest" in the subject matter of this litigation sufficient to justify intervention under rule 24(a)(2). Allowing these claimants to intervene as of right would, as a practical matter, be incompatible with the efficient disposition of this lawsuit. Even assuming that this jurisdiction's liberal approach to intervention would mandate a finding that the tort claimants had demonstrated such an interest, the court would be unable to conclude that denying intervention will, as a practical matter, impede the tort claimants' ability to protect their interests in the insurance coverage available to IPC, or that the applicants' interests will not be adequately protected by IPC, an existing party to this litigation. Intervention as of right shall therefore be denied.

---

10. Plaintiffs also argue that the expertise of the law firm representing the Charter entities in the underlying action is somehow indicative of the tenacity with which the interests of the tort claimants will be represented. Plaintiffs' Opposition at 13 n. 4. However, the expertise of plaintiffs' counsel is of little relevance in determining whether the interests of the parties are the same. As the Court of Appeals for the D.C. Circuit pointed out in *Wilderness Society v. Morton*, "[W]hile ... counsel for plaintiffs in this case are extraordinarily able, it does not follow necessarily that their clients' interests are identical to those of appellants." 463 F.2d 1261, 1262 (D.C.Cir.1972) (per curiam).