NATIONWIDE MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

NATIONAL REO MANAGEMENT,
INCORPORATED, Defendant,

Antoinette Richardson, Intervenor.

No. 99CV1322.

United States District Court,
District of Columbia.

July 26, 2000.

David Patrick Durbin, Jordan, Coyne & Savits, Washington, DC, for plaintiff.

Sharon Smith Van Pelt, Alexandria, VA, Sharon Smith Van Pelt, Washington, DC, for defendant.

Robert J. Pleshaw, Washington, DC, for intervenor.

### MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PROPOSED INTERVENOR'S MOTION TO INTERVENE; GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

URBINA, District Judge.

### I. INTRODUCTION

Nationwide Mutual Insurance Company ("the plaintiff") issued a comprehensive general liability insurance policy to National REO Management, Inc. ("the defendant"). Plaintiff Nationwide Mutual seeks a declaratory judgment that the policy does not require it to defend or indemnify the defendant in two personal-injury actions filed in D.C. Superior Court ("the underlying lawsuits").

Antoinette Richardson ("the applicant"), a plaintiff in one of the underlying lawsuits, moves to intervene pursuant to either Federal Rule of Civil Procedure 24(a) or Rule 24(b). The applicant is suing the defendant in D.C. Superior Court for personal injuries allegedly arising out of a carbon-monoxide leak from a furnace in the defendant's apartment complex. The applicant claims her interests are at stake because the defendant would be unable to pay any judgment the applicant may obtain in her lawsuit unless the Nationwide insurance policy covers this incident.

Meanwhile, the plaintiff insurer moves for summary judgment on the grounds that (1) the insurance contract's pollution exclusion clause bars coverage for any liability or costs arising from the underlying lawsuits and (2)

the defendant failed to give the plaintiff timely notice as required under the contract. The defendant argues that the clause is ambiguous regarding coverage and that it did give the plaintiff timely notice.

The court concludes that: (1) the applicant is not entitled to intervene as a matter of right, but will be allowed to permissively intervene, (2) the intervention is allowed on the condition that the applicant advance only those arguments that the defendant has failed to make, namely that the policy's pollution exclusion clause does not apply because the claims in the underlying lawsuit are based on the defendant's negligence and breach of duty toward the users of its property; (3) determining whether the defendant's alleged negligence and breach of duty, as claimed in the underlying lawsuit, are responsible for the applicant's injuries is irrelevant in deciding whether the pollution exclusion clause applies; and (4) the pollution exclusion clause "clearly and unambiguously" applies to this situation regardless of any negligence or breach of duty on the part of the defendant and bars coverage for any liability or costs arising from the underlying lawsuits. As discussed below, after considering the applicant's arguments, the court will grant the plaintiff's summary judgment motion. Despite this holding, the applicant's motion for intervention will not be rendered moot because the applicant still will have the right to appeal this decision. Based on these conclusions, the court holds that the plaintiff has no obligation to defend or indemnify the defendant in the underlying suits in D.C. Superior Court.

## II. BACKGROUND

Defendant National REO Management, Inc., is insured under a comprehensive general liability insurance policy (Policy No. 52–PR–147–539–0001M) issued by plaintiff Nationwide Mutual Insurance Co. ("the policy"). The policy provides liability protection for the defendant's properties, including the apartment complex involved in the instant litigation, which is located at 2200–2210 Hunter Place, S.E., in the District of Columbia. The policy contains a "Pollution Exclusion Clause" that excludes from coverage any "[b]odily injury … arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises … rented or loaned to … any insured" Pl.'s Mot. for Summ J., Ex. A at 779. The policy defines a pollutant as "any solid, liquid, or gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." *Id.*

During the period that the policy was effective, two gas furnaces in the defendant's apartment complex allegedly began to leak carbon monoxide. Between February 20 and 23, 1995, applicant Antoinette Richardson, a security guard, and Karen Bryant, a tenant in the apartment complex, claimed to have been overcome by carbon monoxide fumes. Both Richardson and Bryant filed lawsuits in D.C. Superior Court against the defendant, its managing company Johnson Gardens II and Washington Gas Light Company. Richardson alleges that the defendant was negligent in maintaining its furnaces and failed to properly supervise those who worked on the furnaces. Pl's Mot. for Summ. J., Ex. D at 1468–76. Subsequently, the Superior Court dismissed Johnson Gardens II as a defendant. Richardson and Bryant demand damages and recovery of medical and other expenses relating to the injuries they attribute to carbon monoxide inhalation. Richardson estimates her damages alone to exceed eight million dollars.

Plaintiff insurer filed the current action in May 1999, seeking declaratory judgment that it is not obligated to defend or indemnify the defendant for Richardson's and Bryant's lawsuits. In November 1999, the plaintiff moved for summary judgment based on the pollution exclusion clause and the defendant's alleged failure to give the plaintiff insurer immediate notice of the Superior Court lawsuits. About one month later, applicant Richardson filed a motion to intervene pursuant to Federal Rule of Civil Procedure 24. This court has subject-matter jurisdiction under 28 U.S.C. § 1332, on the ground of diversity of citizenship.

## III. ANALYSIS

### A. The Motion to Intervene

The applicant moves to intervene under Rule 24 of the Federal Rules of Civil Proce-

dure. The court will review the applicant's motion under Rule 24(a) and (b). For the following reasons, the court concludes that the applicant does not meet the standard to intervene as a matter of right under Rule 24(a). However, the court will allow the applicant to permissively intervene under Rule 24(b) with a condition. Specifically, the court will permit the applicant to make only those arguments that the defendant has not made, namely that, despite the pollution exclusion clause, the insurance contract still indemnifies the defendant against the applicant's lawsuit in D.C. Superior Court because the lawsuit is based on the defendant's negligence in maintaining the furnaces and the defendant's failure to fulfill its duty to protect the users of its property.

### 1. Rule 24(a): Intervention of Right

Federal Rule of Civil Procedure 24(a) provides that, where no statute expressly provides a right to intervene, an applicant may intervene of right only if the applicant: (1) claims a sufficient interest relating to the property or transaction which is the subject of the action, (2) is not adequately represented by existing parties in protecting that interest, (3) submits the motion to intervene in a timely manner and (4) is situated such that the decision in the case may, as a practical matter, impair or impede the applicant's ability to protect that interest. *See* FED. R. CIV. P. 24(a); *see also Mylan Pharms., Inc. v. Henney*, 94 F.Supp.2d 36, 46 (D.D.C.2000) (citing FED.R. CIV. P. 24(a) and *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C.Cir.1998)). The applicant here does not meet these requirements because she does not have a sufficient interest relating to the property that is the subject of this action.[1]

#### (a) *Sufficient interest*

The plaintiff insurer claims that the applicant lacks a sufficient interest in the insurance contract to intervene under Rule 24(a). The applicant asserts that the decision in this case could affect her recovery in the underlying suit because "[the defendant] is a shell corporation without any assets but the insurance policy with the [p]laintiff" Mot. to Intervene ¶ 7. Because the plaintiff does not rebut the claim that the defendant is a "shell corporation," the court will take the assertion as true for purposes of the motion to intervene. However, for the purposes of an intervention of right, the applicant still does not state a sufficient interest in the matter because she has yet to receive an enforceable judgment in the underlying suit in D.C. Superior Court.

■ To have a sufficient interest to justify intervention, an applicant must meet the standing requirements under Article III. *See Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533 (D.C.Cir.1999) (citing *Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C.Cir.1994)). Interpreting this connection between a sufficient interest to intervene and Article III standing, the D.C. Circuit requires that the interest be concrete enough to be "legally protectable." *Cleveland*, 17 F.3d at 1517 (quoting *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971)).

■ This court has held that "an intervenor must demonstrate more than 'a mere provable claim' in order to satisfy the threshold interest required by [Rule 24]" *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 110 (D.D.C.1985), *aff'd without opinion*, 784 F.2d 1131 (D.C.Cir.1986) (quoting *Liberty Mut. Ins. Co. v. Pacific Indem. Co.*, 76 F.R.D. 656, 659 (W.D.Pa.1977)). In *Independent Petrochemical*, plaintiffs who were allegedly exposed to toxic chemicals brought a tort suit against a chemical company for bodily and property damage. 654 F.Supp. 1334, 1339 (D.D.C.1986). One of the plaintiffs in the tort suit then sought to intervene in an action between the chemical company and its insurance company. *See Indep. Petrochemical*, 105 F.R.D. at 106. Without a judgment in the tort suit, the court held that the plaintiffs' interest in the insurance company's action was too "hypothetical" because the original plaintiffs lacked the "significantly protectable interest required for an intervention of right." *Id.*

---

1. Because the court will deny the applicant's motion to intervene on the ground that the applicant lacks a sufficient interest relating to the property or transaction that is the subject of this action, the court will not address the three remaining factors required to intervene as of right.

at 110 (quoting *Donaldson,* 400 U.S. at 531, 91 S.Ct. 534). The court concluded that a judgment in the underlying tort suit is necessary before a party can intervene in a lawsuit between a defendant and its insurance company.[2] *Id.* Similarly, in this case, the applicant has yet to receive a judgment in the underlying tort suit against the defendant. Without this judgment, the applicant cannot prove that she has the legally protected interest in the action as required by Rule 24. *See SEC v. Prudential Sec., Inc.,* 136 F.3d 153, 156 (D.C.Cir.1998).

The applicant also claims that her interests will be affected by the resolution of the instant action because she "will be bound by a judgment in this action." Mem. of P. & A. in Supp. of Mot to Intervene ¶ 6. This assertion is without merit. There is no authority for the proposition that the ruling in this case will affect the underlying lawsuit in D.C. Superior Court through either issue or claim preclusion. In order to be bound by issue preclusion or claim preclusion, a person must be a party or privy to a party in the original lawsuit. *See Blonder–Tongue Labs., Inc. v. University of Illinois Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *City of Port Arthur, Texas v. United States,* 517 F.Supp. 987, 1005 (D.D.C.1981), *aff'd on other grounds,* 459 U.S. 159, 103 S.Ct. 530, 74 L.Ed.2d 334 (1982). To the extent the applicant may claim that she is in privity with the defendant because she works for the defendant, the court rejects that claim. For the purposes of preclusion, a person is in privity with a party only if the person has "precisely the same legal right in respect to the subject matter involved." *Gill & Duffus Srvs., Inc. v. A.M. Nural Islam,* 675 F.2d 404, 406 n. 3 (D.C.Cir.1982) (internal citations omitted). In this case, the applicant's right to a judgment in the underlying lawsuit is different from and independent of the defendant's right to be indemnified under the insurance contract. Therefore, the underlying lawsuit will be unaffected by the ruling in this case.

Accordingly, the court concludes that the applicant lacks a sufficient legal interest in the instant matter to support intervention as a matter of right.

## 2. Rule 24(b): Permissive Intervention

While the applicant may not intervene as a matter of right, a court may allow an applicant to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b). Under Rule 24(b)(2), an applicant must present (1) an independent ground for subject-matter jurisdiction; (2) a claim or defense that has a question of law or fact in common with the main action; and (3) a timely motion. *See* FED. R. CIV. P. 24(b); *EEOC v. National Children's Ctr.,* 146 F.3d 1042, 1046 (D.C.Cir. 1998). In its discretion, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b); *see also Nat'l Children's Ctr.,* 146 F.3d at 1045. The court finds that, subject to a condition discussed below, the applicant meets the requirements for permissive intervention. Therefore, the intervention is allowed on the condition that the applicant advance only those arguments that the defendant has failed to make in the instant matter, namely that the policy's pollution-exclusion clause does not apply because her injuries were caused by the defendant's alleged negligence and breach of duty toward the users of its property, as claimed in the underlying lawsuit in Superior Court.

### (a) *Independent Ground for Subject-Matter Jurisdiction*

The applicant seeks to intervene as a defendant. Therefore, in order to preserve subject-matter jurisdiction, the applicant must be diverse from the plaintiff insurer. It is undisputed that the applicant is a resident of Maryland and the plaintiff is a corpo-

---

**2.** While other circuits are split as to the necessity of a judgment in the underlying tort suit before intervention in an action between a defendant and its insurer, *cf. Redland Ins. Co. v. Chillingsworth Venture, Ltd.,* 171 F.R.D. 206, 207–208 (N.D.Ohio 1997) (judgment is necessary for intervention of right) *with Teague v. Bakker,* 931 F.2d 259, 261 (4th Cir.1991) (intervenors need to be heard regardless of whether a judgment was given), this circuit has held that a judgment in the underlying suit is a *sine qua non* of intervention of right. *See Indep. Petrochemical,* 105 F.R.D. at 106.

ration that both is incorporated in and has its principal place of business in Ohio. Since the applicant is diverse from the plaintiff and would meet the amount-in-controversy requirement,[3] the court concludes that there is an independent ground for subject-matter jurisdiction.

### (b) Common question of law or fact

■ The plaintiff claims that the underlying suit does not share a common question of law or fact with the present case because the applicant has no rights under the insurance contract. See Pl.'s Opp'n to Mot to Intervene, Colinvaux Aff. dated Dec. 21, 1999 at 9–10. In this circuit, however, a finding that the same facts give rise to the applicant's independent claim and the lawsuit before the court is enough to establish a common question of law or fact for this purpose. See EEOC v. National Children's Ctr., 146 F.3d 1042, 1046 (D.C.Cir.1998) (quoting Nuesse v. Camp, 385 F.2d 694, 704 (D.C.Cir.1967)). Thus, while the insurance contract may not be an issue in the underlying case in Superior Court, the factual similarities between the two cases are enough to establish a common question of fact. Specifically, both the present case and the underlying case arise from alleged carbon monoxide emissions from a furnace in the defendant's building that began on February 23, 1995. In addition, neither case can be decided without determining the source of the applicant's injuries. Accordingly, for purposes of Rule 24(b) the court finds a common question of fact in the present lawsuit and the underlying lawsuit in Superior Court.

### (c) Timeliness

#### i. Analysis

■ Plaintiff insurer claims that the applicant has not filed her motion for intervention in a timely manner. When considering the timeliness of a motion to intervene the court must consider: (1) the amount of time the applicant took to file the motion; (2) the purpose of the intervention; (3) the necessity for intervention to preserve the rights of the

applicant; and (4) the probability of prejudice to those parties already in the case. See Hodgson v. United Mine Workers of Am., 473 F.2d 118, 129 (D.C.Cir.1972). After examining these factors, the court concludes that the motion to intervene is timely.

■ The first factor is the amount of time the applicant took to file her motion to intervene. Here, four months elapsed between when the applicant was informed about this lawsuit and when she filed her motion to intervene. By that time, over six months had passed since the lawsuit was filed. Courts generally have found that the amount of time that has elapsed since the litigation began is a factor in determining timeliness, but is not determinative. See id. (internal citations omitted). Thus, a motion to intervene is not necessarily untimely solely because it was filed several months after litigation began. See, e.g., National Wildlife Fed'n v. Burford, 676 F.Supp. 271 (D.D.C. 1985) (motion to intervene filed three months after the suit was timely).

■ The court will consider together the next two factors, the applicant's purpose for intervention and the necessity for intervention to preserve the applicant's rights, because they are closely intertwined. As discussed above, the court will assume that the applicant seeks to intervene in order to ensure recovery in her Superior Court tort suit against the defendant. The applicant alleges that the defendant has no assets except for the insurance policy issued by the plaintiff and is therefore judgment-proof. Therefore, even if the defendant is found liable in the underlying D.C. Superior Court suit, the defendant may avoid paying anything, regardless of whether it wins the instant action against the insurer. Thus, the applicant argues, the defendant has no incentive to spend the resources needed to vigorously defend against the plaintiff insurance company's declaratory judgment action in this court. If the defendant does not vigorously defend this action and loses, the applicant will lose her opportunity for a monetary recovery in the

---

**3.** Under 28 U.S.C. § 1332, for actions based on diversity of citizenship jurisdiction, the amount or value of the matter in controversy must exceed $75,000, exclusive of interest or costs. See 28 U.S.C. § 1332.

underlying lawsuit because the defendant will have no assets from which to pay the judgment. The court agrees with this reasoning, and therefore holds that the applicant should be involved in order to preserve her rights in the underlying tort suit.

The final factor is the prejudice to the parties that are already involved in the action. The plaintiff insurer claims that if Ms. Richardson is permitted to intervene, it would have to perform additional discovery, alter its expert report, rewrite its motions for summary judgment and wait for final judgment. These considerations are especially relevant considering that the applicant waited four months before moving to intervene and that the plaintiff filed its summary judgment motion before the applicant filed her motion to intervene. The court agrees with the plaintiff that it could be prejudiced by the applicant's intervention, but to address this risk, the court will place conditions on the intervention. Accordingly, with the conditions discussed below, the court concludes the applicant's motion for intervention is timely.

### ii. The Conditions

■ A court may place conditions on permissive interventions in order to minimize the delay and prejudice to the existing parties. *See, e.g., J.B. Stringfellow, Jr. v. Concerned Neighbors in Action,* 480 U.S. 370, 382 n. 1, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring) ("[e]ven highly restrictive conditions may be appropriately placed on a permissive intervenor."); *accord Columbus–Am. Discovery Group v. Atlantic Mut. Ins. Co.,* 974 F.2d 450, 469 (4th Cir.1992); *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186, 191–92 (2d Cir. 1970). To avoid undue prejudice to both parties already involved in the litigation, the court will restrict the applicant's intervention.

■ Four factors support restricting the intervention. First, the applicant makes only two arguments not raised by the defendant in support of her contention that the defendant failed to vigorously defend this lawsuit. In her first argument, the applicant claims that the defendant has not argued that its failure to "inspect, repair, maintain, or service its individual gas furnaces, or to supervise, train, or use qualified maintenance personnel to maintain the individual gas furnaces in proper working order" brings the applicant's claim outside of the pollution exclusion clause. *See* Mot. to Intervene ¶ 3. In her second argument, the applicant states that the defendant should have argued that the exclusion clause in the contract does not apply because the primary claim in the underlying lawsuit is the "breach of certain duties owed by [defendant] National REO to users of the premises ... including a failure to warn of defective gas furnaces or to maintain its gas furnaces in proper working order." *Id.* ¶ 4. Other than these two arguments, the applicant seeks only to repeat the arguments already advanced by the defendant.

Second, both the plaintiff and defendant already have spent time and resources filing motions in an attempt to resolve this issue expeditiously. Allowing the applicant to delay the case by waiting to file a motion to intervene until after a dispositive motion was filed by the plaintiff would unnecessarily force both the plaintiff and the defendant to reargue matters that were already briefed. Third, the applicant has not claimed any special knowledge about the contract language that would allow her to shed new light on the meaning of its terms. Fourth, although the applicant has an interest in the insurance contract, she does not have any rights under the contract. Given these considerations, the court sees no reason to allow the intervenor to argue issues that have already been briefed, and therefore concludes that the applicant's intervention must be limited.

The court will allow the applicant to intervene only to argue that the policy's pollution exclusion clause does not apply because the primary claims in the underlying lawsuit in Superior Court are the defendant's alleged negligence in maintaining its furnaces and breach of duty toward users of its property. Accordingly, the court will consider the applicant's two arguments, but, for the reasons discussed below, the court concludes that those arguments are not sufficiently compel-

ling to withstand or merit further delay in resolving the plaintiff's pending summary judgment motion. While the court will grant summary judgment for the plaintiff insurer, the applicant will have the right to appeal this court's ruling in order to advance her two arguments.

### 3. Analysis of the Applicant's Permitted Arguments and Their Effect on the Pending Summary Judgment Motion

The plaintiff argues that the applicant's contentions about the nature of the claim in the underlying Superior Court action are irrelevant to resolving the plaintiff's summary judgment motion. *See* Pl.'s Mem. in Opp'n to Mot to Intervene at 8 n.4. The applicant responds that the exclusion clauses apply only to certain claims. *See* Mot. to Intervene ¶ 4. In this circuit, however, an insurance company is relieved from defending or indemnifying any claim arising out of an incident that was plainly covered by an exclusion clause. *See Interstate Fire & Cas. Co. v. 1218 Wisconsin, Inc.,* 136 F.3d 830, 834 (D.C.Cir.1998). In this case, the pollution exclusion clause excludes coverage for *any* liability from "[b]odily injury . . . arising out of the . . . discharge, dispersal, seepage, migration, release or escape of pollutants." Pl.'s Mot. for Summ. J., Ex. A at 779. Therefore, the exclusion clause applies not only to certain claims, but to any liability that arises out of the alleged escape of any pollutants. *See National Elec. Mfr. Ass'n. v. Gulf Underwriters Ins. Co.,* 162 F.3d 821, 825 (4th Cir.1998). Because the type of claim in the underlying lawsuit in D.C. Superior Court does not affect whether the carbon monoxide leak in this case is covered by the pollution exclusion clause, the court concludes that the applicant's arguments are unavailing. Accordingly, the court will rule on the plaintiff's summary judgment motion at this time. The court also notes that even though the court will grant the plaintiff's motion for summary judgment for the reasons discussed below, the applicant's intervention is not moot because the intervenor's status as a party will give her the right to appeal this decision. *See Mova Pharm.,* 140 F.3d at 1074; *Massachusetts Sch. of Law at Andover, Inc. v.*

*United States,* 118 F.3d 776, 779–80 (D.C.Cir. 1997).

### B. Plaintiff's Motion for Summary Judgment

#### 1. Legal Standard

Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The substantive law upon which a claim rests determines which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of a legal claim or defense, then it is material; otherwise, it is not. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Farmland Inds. v. Grain Bd. of Iraq,* 904 F.2d 732, 736 (D.C.Cir.1990) (internal citations omitted). Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also Farmland Inds.,* 904 F.2d at 735–36.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *District Intown Properties Ltd. Partnership v. D.C.,* 198 F.3d 874, 878 (D.C.Cir.1999). In ruling on the motion, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *District Intown Properties,* 198 F.3d at 878. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . . there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also Farmland Inds.,* 904 F.2d at 735–36.

When contract language is ambiguous, the proper interpretation of the contract is a matter of fact to be resolved by the factfinder. *See Harbor Ins. Co. v. Schnabel Found. Co.,* 946 F.2d 930, 934 n. 1 (D.C.Cir.1991); *Howard Univ. v. Best,* 484 A.2d 958, 966 (D.C.1984). However, when the contract language is clear, the proper interpretation of the contract is a matter of law and the court may issue summary judgment based on the language of the contract. *See Farmland Inds.,* 904 F.2d at 736; *Howard University,* 484 A.2d at 966–67.

In this case, the court concludes that the language of the contract is clear and that the plaintiff has met its burden of proving that there is no genuine issue of material fact. Accordingly, the court will grant the plaintiff's motion for summary judgment.

### 2. Interpretation of the Pollution Exclusion Clause

#### (a) *Applicable Contract Law*

In this case, the parties are completely diverse and the amount in controversy is over $75,000. Thus, federal jurisdiction is properly based on diversity of citizenship under 28 U.S.C. § 1332, "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state (or district or territory)." *Liberty Mut. Ins. Co. v. Travelers Indem. Co.,* 78 F.3d 639, 642 (D.C.Cir.1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Therefore, the choice-of-law rules of the District of Columbia control in this matter.

Under District of Columbia choice of law rules, the laws of the jurisdiction with the most significant interest in the matter govern. *See Interstate Fire,* 136 F.3d at 833 (citing *District of Columbia v. Coleman,* 667 A.2d 811, 816–18 (D.C.1995)). In the insurance context, the jurisdiction with the most significant interest has been interpreted to be either the place of the occurrence that requires coverage or the insured's headquarters. *See Potomac Elec. Power Co. v. California Union Ins. Co.,* 777 F.Supp. 968, 972–73 (D.D.C.1991). In this case, both the occurrence and the insured's headquar-

ters are in the District of Columbia. Therefore, District of Columbia law governs the interpretation of the contract.

#### (b) *Contract language*

The plaintiff contends in its motion for summary judgment that it has no duty to defend or indemnify the defendant for the underlying lawsuits in D.C. Superior Court because the policy's pollution exclusion bars coverage for carbon monoxide related injuries. *See* Compl ¶ 14. The policy, under the subheading of "pollution", excludes coverage for "[b]odily injury ... arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... at or from any premises ... rented or loaned to ... any insured." Pl.'s Mot. for Summ J., Ex. A at 779. Pollutants are defined as "any solid, liquid, or gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." *Id.* The defendant argues that this exclusion clause does not apply to this case because the clause precludes coverage only for industrial or environmental pollution. *See* Def's Opp'n to Pl's Mot for Summ J. ¶¶ 7–8. For the reasons that follow, the court concludes that the policy clearly and unambiguously excludes coverage for the injury alleged in the underlying lawsuit.

#### (c) *Interpreting the contract language*

Courts have developed three approaches toward interpreting the commonly used pollution exclusion clause contained in the contract the plaintiff issued to the defendant. While no court in the District of Columbia has interpreted the language contained in the pollution exclusion clause at issue, numerous courts in other jurisdictions have used one of three approaches to interpret the exact same language contained in this clause in nearly identical cases. Under the first approach, the clause has been held to exclude all liability that results from carbon monoxide emissions because the clause "clearly and unambiguously" bars coverage for any discharge of a pollutant. *See, e.g., National Elec. Mfrs. Assoc. v. Gulf Underwriters Ins. Co.,* 162 F.3d 821, 825 (4th Cir.1998); *Reliance Ins.*

*Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997); *Bernhardt v. Hartford Fire Ins. Co.*, 102 Md.App. 45, 648 A.2d 1047, 1052 (Md. 1994). Under the second approach, courts have held that the clause is unclear as applied to residential carbon monoxide leaks such as the leak in this case, because the clause could be read to apply only to industrial or environmental pollution. *See, e.g., American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 79 (1997); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 682 (Ky.Ct.App.1996). The third approach, which has been adopted by only a small minority of courts, holds that the clause does not to apply to carbon monoxide leaks because the insured reasonably expects to be covered for such incidents. *See, e.g., Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494 (10th Cir. 1994). Courts adopting the third approach base their holding on the belief that the reasonable expectations of the insured should control over the actual contract language, even if it is unambiguous. *See id.* As discussed below, this court holds that the first approach is the most consistent with District of Columbia law and applies most appropriately to this situation. Applying this approach, the court concludes that the liability from the alleged carbon monoxide pollution is excluded from coverage.

*First Approach*

 Under the first approach, pollution exclusion clauses identical to the one at issue in this matter have been held to "clearly and unambiguously" exclude coverage for residential carbon monoxide leaks. *See, e.g., Bernhardt*, 648 A.2d at 1052. The Fourth Circuit followed this approach when it applied District of Columbia law in a similar case. *See National Elec.*, 162 F.3d at 825. In *National Electric*, a company sought indemnification from its insurer to cover the payment of damages to welders who were poisoned by manganese gas released during the welding process. *See id.* at 823. The court held the pollution exclusion clause un-

ambiguously applied to the liability created by the release of manganese gas, thus relieving the insurer of its obligation to indemnify the company. *See id.* at 824. The court also held that District courts would adopt the plain meaning of the language in insurance contracts regardless of whether that language is favorable to the insured. *See id.* (quoting *Medical Serv. of D.C. v. Llewellyn*, 208 A.2d 734, 736 (D.C.1965)), *see also Northbrook Ins. Co. v. United Servs. Auto. Assoc.*, 626 A.2d 915 (D.C.1993) (internal citations omitted). To hold that the clause does not exclude residential carbon monoxide exposure, however, would be to seek out ambiguities in the contract language where none exist. *See National Elec.* at 824 (the court should not seek out ambiguities), *Northbrook Ins. Co.*, 626 A.2d 915 (same). In response to this precedent, the defendant argues that the pollution exclusion clause should cover only environmental or industrial pollution. In *National Elec.*, however, the Fourth Circuit rejected limiting the exclusion clause to environmental pollution. *See* 162 F.3d at 825. Similarly, other courts that have adopted this approach rejected the defendant's other contention that the clause should apply only to pollution created by an industrial process. *See, e.g., Longaberger Co. v. United States Fidelity & Guar.*, 201 F.3d 441 (6th Cir.1999) (finding a carbon monoxide leak from a defective furnace in a residential building was "pollution" within the meaning of the exact exclusion clause at issue in this action and therefore not covered under the insurance policy). *Essex Ins. Co. v. Tri–Town Corp.*, 863 F.Supp. 38, 40 (D.Mass. 1994) (holding carbon monoxide leak from an ice-resurfacing machine was excluded from coverage as pollution); *Owners Ins. Co. v. Singh*, 1999 WL 976249, *3 (Ohio App. 5th Dist.) (carbon monoxide leak in an apartment building caused by a furnace was not covered by insurance policy because it was pollution).[4] The plaintiff's position is further supported by the contract's express definition of the term "pollutant" as "any ... gaseous ...

---

4. The defendant claims two of the cases are inapplicable because the District enforces the expectations of the insured over the contract language while Ohio does not. Both jurisdictions, however, enforce the language of a con-

tract as written if the language is unambiguous, interpreting any ambiguities in favor of the insured. *Compare Singh*, 1999 WL 976249, *3 *with Cameron v. USAA Property and Casualty Ins. Co.*, 733 A.2d 965, 968 (D.C.1999).

irritant or contaminant." Pl.'s Mot. for Summ. J., Ex. A at 779. To construe this clause as excluding only industrial pollution in an insurance policy issued to a real estate company that leases apartments would render the clause virtually meaningless. It is a fundamental principle of contract interpretation that a contract should be interpreted so as to give meaning to each of its provisions. *See United States v. Insurance Co. of N. Am.*, 83 F.3d 1507,1511 (D.C.Cir.1996) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995)). Thus, the clause must not be construed so narrowly as to apply only to environmental or industrial pollution.

For the reasons discussed above, the court finds the first approach most consistent with District law and most appropriate for addressing the carbon monoxide leaks at issue in this action. The court will not create an ambiguity in a clause that clearly and unambiguously relieves the plaintiff of its obligation to indemnify and defend the defendant in the underlying lawsuits in the Superior Court.

*Second Approach*

Under the second approach, courts have held that the exclusion clause seems clear, but proves ambiguous when applied to gas leaks in a non-industrial setting. *See Motorists Mut. Ins. Co.*, 926 S.W.2d at 682. These holdings are based on the premise that, if left unchecked, the pollution exclusion clause could be read to bar coverage for many types of ordinary business liabilities that both parties intended to cover under the contact, but which happened to involve a "pollutant." *See id, see also American States*, 217 Ill.Dec. 30, 666 N.E.2d at 703. These courts also fear that the overexpansion of the pollution exclusion clause would be compounded because the term "pollutant" could hypothetically apply to virtually any substance or chemical. *Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D.Kan.1991) ("there is virtually no substance or chemical in existence that would not irritate or damage some person or property"), *aff'd.* 987 F.2d 1516 (10th Cir.1993). For example, these courts express concern that the pollution exclusion clause could deny coverage where a person slips and falls on a bottle containing a substance that could be determined to be a pollutant. *See Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir.1992) (providing an example of a person slipping on Drano). Although the court shares the concern expressed in this second approach, it declines to follow this approach in this case. As discussed above, District law requires a court to enforce the terms of an unambiguous contract regardless of whether such enforcement favors the insured. *See Northbrook Ins. Co. v. United Servs. Auto. Assoc.*, 626 A.2d 915 (D.C.1993). The contract includes in its definition of a "pollutant" any gaseous irritant or contaminant and it bars coverage for any liability that arises out of the dispersal of pollutants. *See* Pl.'s Mot. for Summ J. Ex. A at 779. If the parties did not limit the scope of the exclusion clause, the court cannot supply limits that are unsupported by the language of the contract. Moreover, a number of courts that have recognized the danger of construing the pollution exclusion clause too expansively still have found that gas leaks inside of a structure qualify as a pollution event. *See, e.g., Certain Underwriters at Lloyd's London v. C.A. Turner Construction Co.*, 112 F.3d 184, 188 (5th Cir.1997); *Amerada Hess Corp. v. Zurich Ins. Co.*, 51 F.Supp.2d 642, 650 (D.Vi. 1999) (holding that the pollution exclusion clause barred coverage of a gas leak in a factory and stating, "this may not be a toxic tort the size of Three Mile Island, but neither is it the case that one individual slipped on an open can of Drano"). This case differs from the Drano example, where a small amount of a commonly used chemical was released. *Cf. Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d at 1043. Here, the carbon monoxide fumes acted as a pollutant by allegedly migrating through the gas line and out of two separate furnaces to injure people. Accordingly, this court finds no ambiguity as to whether the facts of this case fall under the policy's pollution exclusion clause.

 Courts that have found the clause ambiguous in its application also argue that the history of the pollution exclusion clause suggests that it was intended to cover only incidents that involve environmental damage. *See, e.g., Motorists Mut.*, 926 S.W.2d at 681–

82. As the court has noted, however, District law dictates that if the insurance policy language is unambiguous, the court must apply the plain meaning of the language in the contract and may not consider extrinsic evidence as to how to interpret the policy. *See American Red Cross v. Travelers Indem. Co. of R.I.*, 816 F.Supp. 755, 758 (D.D.C.1993) (applying District of Columbia law). Ambiguities exist only if the term is "reasonably susceptible of different constructions or interpretations." *Cameron*, 733 A.2d at 968 (internal citations omitted). It is not enough that the parties disagree about the term's meaning. *Id.* Because there is no ambiguity as to the meaning or application of the clause, the consideration of outside evidence such as the history of the clause or the intent of its drafters is not appropriate. Accordingly, the court declines to apply this second approach here.

*Third Approach*

Under a third approach, courts have held that the objectively reasonable expectations of the insured will be honored regardless of whether the policy is found to be ambiguous. *See, e.g., Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494 (10th Cir.1994). Although the defendant argues that the District has adopted this approach, no authority or evidence supports this argument. In fact, the D.C. Court of Appeals has stated explicitly that when contract language is "clear and unambiguous," the contract is "not subject to the doctrine of reasonable expectations." *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C.1996). In other words, when the court holds that contract language has a plain meaning, the court will not consider any act or conduct by the parties in discerning what the parties actually intended. *See National Elec.*, 162 F.3d at 825 (quoting *Bolle v. Hume*, 619 A.2d 1192, 1197 (D.C.1993)). Consequently, the court finds this approach inapplicable to the current dispute.

The court holds that the first approach to interpreting the pollution exclusion clause is the most consistent with District law and is the most appropriate in this case. Although the court recognizes the concerns arising from an overly broad application of the pollution exclusion clause, applying the clause in this case does not stretch the clause beyond reasonable limits. Therefore, the court holds that the pollution exclusion clause "clearly and unambiguously" bars coverage under the contract in this case for any liability arising from bodily harm caused by the release of carbon monoxide from the furnaces in the defendant's building. Thus, the clause relieves the insurer of its obligation to defend or indemnify the defendant for the claims brought in the underlying Superior Court lawsuits by the applicant Antoinette Richardson or by Karen Bryant.

### 3. Notice Requirement

The plaintiff also argues that summary judgment is appropriate because the defendant failed to give the plaintiff timely notice of the incident as required by the policy. However, the court need not decide this matter because the court will grant summary judgment for the plaintiff based solely on the pollution exclusion clause.

## IV. CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part the applicant's motion to intervene. The applicant will be allowed to permissively intervene on the condition that she argue only that the pollution exclusion clause does not apply to her claims of negligence and breach of duty in the underlying Superior Court lawsuit. The court further grants the plaintiff's motion for summary judgment because the pollution exclusion clause contained in the insurance contract excludes from coverage any injuries that resulted from the carbon monoxide leak from the defendant's furnace. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 25 day of July 2000.

### *ORDER*

**GRANTING IN PART AND DENYING IN PART PROPOSED INTERVENOR'S MOTION TO INTERVENE: GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

For the reasons stated in the court's Memorandum Opinion issued separately and contemporaneously this 25 day of July, 2000, it is

ORDERED that the applicant's motion to intervene shall be and hereby is **GRANTED IN PART** and **DENIED IN PART**; and it is

**FURTHER ORDERED** that the applicant's motion to intervene shall be granted only with respect to those arguments that the defendant has not advanced in this action, namely that the insurance policy's pollution exclusion clause does not apply because the intervenor's claims in the underlying Superior Court lawsuit are based on negligence and breach of duty; and it is

ORDERED that the plaintiff's motion for summary judgment shall be and hereby is **GRANTED**; and it is

**FURTHER ORDERED** that this case be removed from the court's docket and all other pending motions be denied as moot.

**SO ORDERED.**